[No. 9105. Department One. December 21, 1910.]

CARRIE MAYER *et al.*, *Appellants*, v. MIKE JACOB,
*Respondent*.[1]

TRUSTS—RESULTING TRUSTS — EVIDENCE — SUFFICIENCY. The evidence establishes a trust in lands purchased, where the more reliable and preponderance of the testimony shows that the plaintiffs and defendant agreed to buy the land in equal shares, one of the plaintiffs paid the $500 earnest money, and the contract was taken in the name of the defendant, who almost immediately thereafter repudiated the contract, claiming that the money was a loan to him, it appearing that the parties were related and intimately acquainted, and that defendant's testimony is lacking in candor.

Appeal from a judgment of the superior court for Clarke county, McMaster, J., entered April 7, 1910, upon findings in favor of the defendant, in an action to establish a trust in real property. Reversed.

*Miller & Crass*, for appellants.

*Bauer & Greene* and *Jas. P. Stapleton*, for respondent.

Gose, J.—The complaint in this case alleges that the respondent holds title to an undivided two-thirds of lot 8, block 9, in the city of Vancouver, in trust for the plaintiffs. The case was tried to Judge McCredie, and upon his retirement, was determined by his successor in office, Judge McMaster, upon the transcribed testimony. From a decree in favor of defendant, the plaintiffs have appealed.

A short time prior to November 8, 1908, the respondent began negotiations with a Mr. Rowley, the agent of the owners of the property, with a view to purchasing it. The selling price was $16,000, but the terms were not stated. On November 8, the appellants and the respondent entered into an arrangement between themselves for the purchase of the property. It was then agreed that they would purchase it in equal shares. They were desirous of getting the price re-

[1]Reported in 112 Pac. 361.

duced and of arranging the terms of payment. They wanted to pay one-half the purchase price in cash, and to secure time on the remainder. With this object in view, the respondent renewed the negotiations with the agent the following morning. The latter first demanded that the entire purchase price should be paid in money, but upon the refusal of the respondent to treat with him upon a cash basis, he later agreed that he would accept one-half in money and give time on the balance. The agent demanded the immediate payment of $500 earnest money. The respondent told him that the appellant Mayer would pay it, which she did a few minutes later. A receipt was given her in her name for the $500, and a contract for the sale of the property was executed by the owners to the respondent.

The parties to the action all live in Portland, Oregon, but the appellant Mayer is engaged in business at Vancouver, Washington. The earnest money was paid at Vancouver, in the forenoon of November 9. About 6:30 o'clock on that evening, the respondent rang up the appellant Glicksman at Portland, and the latter said to him, "Well, Mike, we got a good buy. Carrie [meaning the appellant Mayer] just came over." The respondent replied, "I guess it's all off. I have somebody else." The appellant Glicksman then called Mrs. Mayer, who continued the conversation with the respondent. The latter then informed her that he had sold a half interest in the property to another party, and that he would send her a check for the money she had paid, to which she demurred. Later in the evening a check for the amount was tendered and refused.

The respondent asserts that the arrangement of November 8 was merely provisional, and that the appellant Mayer refused to unite in the purchase the following day, for this reason, that the price was too high; that she advanced the money as a loan, he agreeing to repay it the same day, and that he called her in the evening to notify her that he would send her the check. His testimony, however, as to the con-

duct of the appellants when he told them that he had taken in another party, makes his statements of the case appear improbable. He says that, when he told the appellant Glicksman that the latter was not in on the deal, he seemed excited, and that the appellant Mayer, when informed of that fact, "commenced to holler," and that her first exclamation was, "You played me a dirty trick." Between eleven and twelve o'clock of that evening, he called the agent, Rowley, to the telephone, and inquired of him in whose name the contract was taken. It is highly improbable that the appellants would have manifested so much displeasure at his statement that he had sold a half interest in the property to another party, if they had voluntarily refused to unite in the purchase a few hours earlier in the day.

The appellants claim that they were purchasing the property with a view of organizing a corporation, and building and establishing a department store. The respondent both affirms and denies this statement. Indeed, it may be said that his testimony in some respects is wanting in candor and impressiveness, whilst the testimony of the appellants has the ring of truth. The appellant Mayer asserts that she advanced the $500 earnest money upon the understanding with the respondent that the appellants and the respondent were purchasing the property in equal shares. We have not overlooked the testimony of the respondent's witnesses Simon and Ball. They gave evidence as to what they heard the respondent say at the telephone on November 9, and that he used the name "Carrie," the name employed by the friends of the appellant Mayer in addressing her. The appellants are relatives. The appellant Mayer is a kinsman of the respondent by marriage. The appellant Glicksman was upon terms of intimate friendship with the respondent, and the parties have all sustained confidential relations for many years. Viewing the testimony as a whole, considering the conduct of the parties and the inferences that may reasonably be deduced, we are convinced that the appellants have sustained the bur-

den which the law puts upon the party having the affirmative.

A *lis pendens* was duly filed on November.11, 1908. Pending the action, the lot was conveyed to the respondent.

The judgment is reversed, with directions to enter a decree declaring the appellants to be the owners in equal shares of an undivided two-thirds of the property, upon their paying into the registry of the court their just proportion of the purchase price with legal interest.

RUDKIN, C. J., FULLERTON, MOUNT, and PARKER, JJ., concur.